31 C.C.P.A. (Patents)

## NEHI CORPORATION v. HOUSE-HOLD-PAC CORPORATION.

Patent Appeals No. 4895.

Court of Customs and Patent Appeals.

April 27, 1944.

Rehearing Denied June 19, 1944.

C. L. Parker, of Washington, D. C., for appellant.

A. W. Murray, of Chicago, Ill., for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

This is an appeal from the decision of the Commissioner of Patents (rendered by an assistant commissioner), 56 U.S.P. Q. 238, reversing the decision of the Examiner of Trade-Mark Interferences in a trade-mark opposition proceeding.

House-Hold-Pac Corporation, appellee here, filed an application for the registration, under the Trade-Mark Registration Act of February 20, 1905, 15 U.S.C.A. § 81 et seq., of a mark which is described in the decision of the commissioner as follows: "The mark of the application is a composite mark quite elaborate and distinctive in design and includes a circular display of the words 'The Insured Drink' on a wide circular band surrounding a large letter 'H' on a circular black background, and below this display are the words 'House-Hold-Pac' on a shaded background on which the words 'Nationally Advertised' also appear, this background being oval in shape and embracing the lower half of the upper circular display. The word 'Drink' and the expressions 'Nationally Advertised' and 'House-Hold-Pac' are disclaimed."

Nehi Corporation, appellant here, opposed appellee's application, basing its opposition upon its prior use and registration under the 1905 act of the notation "Par-T-Pak."

The goods of the respective parties are identical in character, being nonalcoholic beverages sold as soft drinks, and syrups and extracts for making same.

Appellant's mark was registered November 24, 1936, and there is no question of it having used the mark prior to any date of use claimed by appellee for its mark.

So, in the final analysis, the question for determination is whether or not the mark of appellee so closely resembles the mark of appellant that its use on identical goods would be likely to cause confusion or mistake in the mind of the public or to deceive purchasers.

The difference in the conclusions of the tribunals of the Patent Office seems to have been predicated largely upon their respective ideas as to how the goods would normally be known and ordered by purchasers.

Both the Examiner of Interferences and the commissioner apparently agreed that the terms "Par-T-Pak" and "House-Hold-Pac" are similar in significance, the former (after expressing the view that "House-Hold-Pac," although disclaimed as descriptive, "is not of such nature as to be without trade-mark significance and that this term constitutes the dominant portion of the mark") saying: "Likewise the examiner is of the opinion that these terms are very similar in significance. Both terms would seem to indicate that the goods are put up in such type of containers and in such quantities that there is enough for a group of persons; in the case of the opposer, a party, and in the case of the applicant, a household."

Upon this matter the commissioner said: "I join in the consensus of opinion that the expression 'House-Hold-Pac' in applicant's mark indicates to purchasers and the public the quantity of soft drink in the container to which the mark is applied * * *."

It was the opinion of the Examiner of Interferences that very few purchasers would call for goods by the name of "H" drink but "rather would purchase the goods under the name of 'House-Hold-Pac'." The commissioner expressed the opinion

that "purchasers desiring to obtain the goods of applicant [appellee here] in particular by referring to applicant's trademark verbally would ask for the drink with the trade-mark which has a big 'H' in a circle," and he regarded that feature as having "considerably more trade-mark significance in applicant's mark than the expression 'House-Hold-Pac'."

We are not disposed to speculate at any great length upon the question of how appellee's goods may be called for by purchasers, but we may say that we doubt whether customers wanting a soft drink would order it by the long and somewhat involved designation stated by the commissioner. Our surmise is that most probably the customers would call for either a House-Hold-Pac or a big H. In view of the general knowledge (of which we may take judicial notice) as to how soft drinks are called for, it seems a fair surmise that the purchasers of goods such as are here involved would be disposed to shorten the terms as much as possible. It would not surprise us to learn that a large number of customers would merely say to the soft drink dispenser, "Give me a pac," and would not distinguish "pac" from "pak" by spelling the word. Those thirsty for soft drinks very frequently take the "shortest cut" possible in ordering the drink they want.

The commissioner correctly stated: "The goods are inexpensive, are consumed in use and frequently are purchased by verbal order and without great discrimination and care as to their precise source of origin or as to the precise composition of the trade-mark that is applied thereto. There is more likelihood of confusion with goods of this kind than with goods that are purchased with more discrimination and care."

Appellee's arrangement of "House-Hold-Pac" in the mark it seeks to register is hyphenated in the same manner as appellant's mark and both are three syllable notations having, in our opinion (as was held below), much the same significance. The last words in each have the same sound when pronounced.

We are unable to escape the conclusion reached by the Examiner of Interferences that the notation "House-Hold-Pac," although disclaimed, has, and was intended by appellee to have, a trade-mark

significance. It will be observed that the commissioner did not hold to the contrary, but merely expressed the view that the feature of the big "H" in a circle has considerably more significance than the controverted notation. It seems to us that if the notation has any trade-mark significance that fact must be taken into consideration in determining the controversy.

It appears that in 1940 appellee obtained registration of the notation standing alone and somewhat fancifully arranged, under the Act of March 19, 1920, 15 U.S.C.A. § 121 et seq., for use on the same kind of goods here named, and this fact was regarded by the Examiner of Interferences as an indication that appellee itself regarded it as having trade-mark significance. The commissioner made no reference to that registration in his decision but in its brief before us appellee has cited it, for just what purpose we are unable to determine. It certainly does not aid its case in any way.

Appellee's application states that its mark is "applied or affixed to the goods, or to the packages containing the same." In our opinion, when affixed to packages containing a number of bottles of soft drinks, the notation "House-Hold-Pac" would be descriptive, but when applied to the individual bottles it would not be descriptive of the contents of same but would have a distinctive trade-mark significance in that it would indicate origin, and, by reason of its resemblance to "Par-T-Pak," purchasers would be likely to attribute such origin to appellant. So far as the notation has trade-mark significance, the fact that it is disclaimed is of no importance, because the disclaimer does not prevent the likelihood of confusion. See Walgreen Co. v. Godefroy Manufacturing Co., 58 F.2d 457, 19 C.C.P.A.,Patents, 1150.

In view of the similarity in the meaning attaching to the terms, and the resemblances which have been pointed out, it is our conclusion that confusion in trade would probably result from appellee's use of the mark on the goods described, and that the notice of opposition should have been sustained and the registration denied.

As a newcomer in the field any doubt should be resolved against appellee.

The decision of the commissioner is, therefore, reversed.

Reversed.